## THOMAS W. WILSON AND ANOTHER v. JOHN F. GORDON.

Quere, whether, where two new trials have already been granted, it is necessary to move for a third, in order to obtain a revision of the judgment, on the ground that the verdict was contrary to the evidence; the statute not permitting a third new trial to be granted to the same party by the District Court.

After three concurring verdicts, in a case depending entirely on a question of fact, and where the amount in controversy is so inconsiderable, we do not feel warranted in reversing the judgment on account of the supposed error in admitting the testimony (of the declarations of the payee of a note against the maker, as to the application of a payment to one of two notes held by the former against the latter.)

Appeal from Guadalupe.  Tried below before the Hon. Thomas H. DuVal.

Suit by John F. Gordon against Thomas W. Wilson, J. R. Johnston and Jonathan Barber, on a promissory note for $122, signed by the two former, payable to the latter, dated July 13th,

Wilson v. Gordon.

1853, due January 15th, 1854, and assigned to the plaintiff, as alleged in the petition, on the 8th of September, 1854, Johnston signed as surety.

Defendants Wilson and Johnston pleaded usury; payment to Barber of $100 in a horse sold to Barber by Wilson in November, 1853; and a set-off of $20 for legal services rendered by Wilson to Barber at November Term, 1853, and on the 9th and 10th of January, 1854. Spring Term, 1855, discontinuance as to defendant Barber for want of service, and verdict for plaintiff for $114 70, and new trial granted. Fall Term, 1855, verdict for plaintiff for "the amount of the note and interest at eight per cent. per annum from the 16th day of January, 1854," and new trial granted. Spring Term, 1856, verdict and judgment for the plaintiff for $109; appeal by defendant Wilson only; and remittitur of $14 of the judgment.

There was a statement of facts, the substance of which was as follows: Mrs. Grinage, a witness for defendants, testified that Barber, the payee of the note, was overseer for her husband from January to August, 1854; heard him say he held a note of $122 against Wilson and Johnston, the defendants; heard him state that Wilson had paid him nearly the whole amount of said note by selling him a horse called Tom, and by legal services; heard him say he had agreed with Wilson, when he bought the horse, that he would give up the note, but that Wilson had acted rascally with him in not letting him know that Bruce and Nicholson were going to run away, and that he believed he would therefore sell Wilson's note. On cross-examination, witness stated that some time afterwards she heard Barber say that the horse was to be applied to the payment of a note he held against Wilson alone, which note, he stated, was for his services as overseer for Wilson.

Joseph Wilson, for defendants, testified that defendant Wilson applied to him in October, 1853, for a horse to be applied as a payment on the note in controversy; that witness afterwards delivered the horse to Barber, the payee of the note, and Barber was to allow defendant one hundred dollars for the same on the note sued on; that he knew that the horse was to be applied as a payment upon the note in controversy, because the horse belonged to witness, and because the note was drawing three per cent. per month, and because it was the express agreement when defendant Wilson applied for the horse, that it was to make a payment on the note that was drawing three per cent. interest

per month; that he knew defendant was to pay that rate of interest on this note, as he was present when it was given; that defendant borrowed between $95 and $100 from Barber, and computed interest on the same at the rate of three per cent. per month until the 1st January, 1854, and then added the principal and interest together and gave this note for the same; that defendant rendered the services charged in defendant's exhibit, and that Barber agreed to pay the amounts therein charged. On cross-examination, witness testified that Barber held two notes against defendant Wilson, the one in controversy and another against him individually for      dollars; that Barber bore a good character up to the time he left the country, which was a short time after the date of the transfer of the note in controversy; that he applied to him three times for the note, but was told that he did not have it with him. Re-examined, witness testified that Barber sold the individual note against Wilson to F. Mofield, and which individual note is the same offered in evidence by defendants. (So in the statement of facts. See below.—REPS.)

Plaintiff then proved by way of rebuttal, by J. M. Brem, that Barber was a near relative of witness; that Barber was in the habit of consulting with him about his business; that at one time he placed in his hands the note in controversy and one against defendant Wilson individually for      dollars. (Defendant Wilson here produced a note given by him to Barber, which together with the one sued on, was shown to witness and recognized by him to be the same that he at one time had in his possession.) Witness further testified, that Barber, a few days before he obtained the horse alluded to by Joseph Wilson, showed witness this horse, which was then ridden by Wilson, and asked him if the horse would be worth $100 on defendant Wilson's individual note; that defendant wished to sell him to him for that amount to be credited on his individual note; that witness afterwards heard Barber say, after the horse was delivered, that the individual note was nearly all paid; and that Barber bore a good character up to the time he left the country.

The plaintiff excepted to the testimony of Mrs. Grinage, on the ground that she testified merely to the declarations of Barber, whose testimony would be the best evidence. Defendants excepted to the testimony of Brem, on the ground that it was hearsay, and that the declarations proved were made by a party whose interest was adverse to defendants.

*J. Ireland,* for appellants. I do not put any great value on Mrs. Grinage's deposition; but leave it out of the question and the case stands upon the testimony of Joseph Wilson, which was clear, explicit and positive that Barton received the horse on the note sued on at $100 00, and that he agreed to allow defendant Wilson his charges filed with his answer as a credit also on the note in suit, and even gives his reasons for being so positive. Joseph Wilson stood fair, unimpeached and unimpeachable before the jury, and they are not at liberty to disregard the testimony of a witness who thus comes before them.

II. Barber's admissions were conclusive on Gordon, having been made long before Gordon purchased the note, and before it was due. (1 Greenlf. on Ev. 190–1.) This Court will not, I presume, ask for authorities to establish the fact that Barber's declarations made to Brem were improperly admitted. It is clearly admitting declarations of a party whose interest was adverse to us, and declarations too that we did not attempt to introduce. (Id. 171, 180.)

III. True it is, that this Court has established the rule that a new trial will not be awarded here on the ground of the verdict being contrary to the evidence, unless there has been a motion for a new trial in the Court below; but as the statutory number had been exhausted, it would have been a useless and unmeaning thing to ask a Court to do what we know it could not grant.

*W. B. Leigh* and *J. J. Thornton,* for appellee. I. The Court did not err in admitting the testimony of Brem. The testimony of Mrs. Grinage had been introduced by the defendants, to prove the admissions of Barber; and it was clearly competent for the plaintiff to controvert the same "by other testimony; even by calling the party himself, when competent; but it is not necessary to produce him, his declarations, when admissible at all, being admissible as original evidence, and not as hearsay." (1 Greenlf. Sec. 191.)

II. All the testimony shows then that the witness Wilson was mistaken, and this was the view the jury took of it. And this Court will certainly not, when the testimony was so conflicting, and after three verdicts for plaintiff, disturb this verdict.

WHEELER, J. As there was no motion for a new trial, we might decline to revise the judgment on the ground that the ver-

dict was not warranted by the evidence. (1 Tex. R. 70 ; Id. 311.)
The burden of proof, however, was on the defendant ; and the
testimony of his own witnesses was so contradictory, as it re-
spected the application of the payment, as to warrant the jury
in rejecting it altogether.

The testimony excepted to was competent to prove the exist-
ence of the two notes ; and as to any other matter spoken of by
the witness, it was too indefinite to be supposed to have had any
material bearing on the case.   At all events, after three concur-
ring verdicts in a case depending entirely on a question of fact,
and where the amount in controversy is so inconsiderable, we do
not feel warranted in reversing the judgment on account of the
supposed error in admitting the testimony.   The judgment is
affirmed.

                                        Judgment affirmed.